**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

| | |
|---|---|
| ARTURO MENDEZ NORIEGA,<br>Petitioner,<br>v.<br>Warden RAYMOND MADDEN,<br>Respondent. | Case No. ED CV 16-01400-FMO (AS)<br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

This Report and Recommendation is submitted to the Honorable Fernando M. Olguin, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I. INTRODUCTION

On June 29, 2016, Arturo Mendez Noriega ("Petitioner"), a California state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. §

2254 ("Petition"). (Docket Entry Nos. 1, 8). On September 19, 2016, Respondent filed an Answer to the Petition, accompanied by a supporting Memorandum of Points and Authorities ("Answer Memorandum"). (Docket Entry No. 15). On October 17, 2016, Petitioner filed a Traverse, accompanied by a supporting Memorandum of Points and Authorities ("Traverse Memorandum"). (Docket Entry No. 18). For the reasons stated below, it is recommended that the Petition be DENIED and that this action be DISMISSED with prejudice.

## II. PROCEDURAL HISTORY

On August 20, 2013, a Riverside County Superior Court jury found Petitioner guilty of nine counts of aggravated assault of a child under 14 in violation of California Penal Code ["P.C."] § 269 (Counts 1 to 9). (See Clerk's Transcript ["CT"] 202-03, 231-39; 2 Reporter's Transcript ["RT"] 441-43). On September 27, 2013,, the trial court sentenced Petitioner to state prison for a total of 135 years-to-life, consisting of 15-years-to-life on Count 1, plus consecutive terms of 15-years to life on Counts 2 through 8. (See CT 265-69; 2 RT 450-52).

Petitioner appealed his convictions and sentence to the California Court of Appeal. (See Respondent's Notice of Supplemental Lodgment ["Supplemental Lodgment"] No. 3; Respondent's Notice of Lodgment ["Lodgment"] No. 5). On June 17, 2015, the California Court of Appeal affirmed the Judgment. (People v. Noriega, 237 Cal.App.4th 991 (2015) [certified for partial publication]; Lodgment No. 6). Petitioner then filed a Petition for Review with the California Supreme Court which was summarily denied on September 16, 2016. (See Lodgment Nos. 8-9).

## III. FACTUAL BACKGROUND

Petitioner is not challenging the sufficiency of the evidence to support his convictions. The following summary is taken from the "Factual and Procedural History" section of the California Court of Appeal's Opinion[1] (see People v. Noriega, supra, 237 Cal.App.4th at 994-98, footnotes in original; Lodgment No. 6 at 3-10, footnotes in original):

### A. THE PEOPLE'S CASE-IN-CHIEF

#### 1. DOE'S TESTIMONY

> Doe was born in June 1997, and was 16 years old at the time of trial. Doe considered [Petitioner] to be her stepfather even though he was not married to her mother, V.C. [Petitioner] began living with Doe and her family in Mead Valley when she was very young. Her first memory of him was when she was four or five years old.[2] Doe had a little brother who also lived with them. Doe's older sister, K.A., lived with them for some time period when Doe was young.
>
> Initially, Doe did not want to explain the details of what happened to her. She insisted she already told her story numerous times. Doe was angry because she wanted her mother back.[3] Doe was not the kind of person who "speaks up for herself" and did not want to fight to get [Petitioner] in jail when it would not bring her mother back. It was not fair that her mother was found guilty but [Petitioner] still had not been found guilty.
>
> Eventually, Doe indicated that [Petitioner] molested her in the living room, her mother's bedroom and the bathroom of their house. Doe stated that [Petitioner] touched her vagina with his hand. [Petitioner] touched her when she was "five, six, seven, eight, nine, 10, 11, 12, 13." These assaults

---

[1] Factual determinations by the state court are presumed correct and can be rebutted only by clear and convincing evidence. Pirtle v. Morgan, supra, 313 F.3d at 1168.

[2] [Petitioner] was 56 years old at the time of trial.

[3] Doe's mother had pleaded guilty to child endangerment for her involvement in the case and had been deported to Mexico.

occurred approximately two times each week. [Petitioner] usually touched her during the night when just she and her little brother were home and her mother was at work. Doe slept in the living room when she was five years old. K.A. slept in the second bedroom.

The first time she could remember [Petitioner] having sex with her was when she was five years old. She was in the bathroom and K.A. was in her room. V.C. was not home. Doe used the bathroom. [Petitioner] entered the bathroom and took her pants and underwear off. [Petitioner] pulled down his own pants and underwear. [Petitioner] put his penis in Doe’s vagina.

Doe did not call out for K.A. when this happened and did not fight because she was five years old and did not know what was happening to her. Doe did not tell K.A. what happened to her because she was too young to know what was going on. Doe did not want to tell her mom because it was “embarrassing.”

Sometime when she was between the ages of seven and nine, she had blood in her underwear. V.C. asked her about it. She did not tell V.C. what [Petitioner] was doing to her. Doe did not start her menstrual cycle until she was 12 years old.

Doe also indicated that [Petitioner] put his penis in her anus. It occurred in both his bedroom and the bathroom. She was “Young” when this happened and it happened more than one time. Doe would not say anything to him when this happened. These sexual assaults would happen at night while her mom was at work. He sodomized her at least twice each month. [Petitioner] only put his penis in her vagina and anus.

[Petitioner] oftentimes took her and her little brother to school. She would sit next to [Petitioner] in the front seat of his pickup truck. [Petitioner] would touch her vaginal area and breasts over her clothes while they were driving. Doe's little brother would see [Petitioner] touch Doe; he knew that [Petitioner] was touching her inappropriately. As she got older, she would try to move his hands away from her but he would try again.

Doe did not want to have sex with [Petitioner]. He never hit her or forced her. When [Petitioner] molested Doe, he told her that they were just playing. When she was little she believed him.

[Petitioner] never threatened her that if she told someone something bad was going to happen. She did not know why she had sex with [Petitioner]. Only once, when she was 11 or 12 years old, she cried. She cried because she was tired of being molested.

Doe indicated that the molestations stopped when she was 13 years old. She believed it was because V.C. was pregnant

and stopped working nights. Also, before V.C. got pregnant, Doe started to stay at a friend's house after school because she did not want to go home.

Doe told her school counselor about the molestations on December 14, 2011. Doe finally told the counselor because V.C. gave birth to another baby, a girl, in July 2011. Doe "didn't want the same thing to happen" to her little sister. Doe told the counselor that she could not go home because V.C. would "beat the shit" out of her. Doe thought that V.C. would think she was lying and would beat her up for going to the counselor and wasting V.C.'s time. The counselor called the police. Doe was placed in a foster home.

V.C. asked Doe when she was in elementary school if she was being molested by [Petitioner]. Doe was afraid and told her no.

V.C. was going to take Doe to the doctor because of the blood in her underwear. V.C. and [Petitioner] drove Doe to a clinic about a week after the blood was found in her underwear. However, [Petitioner] and V.C. fought outside and they never went in. Doe could not hate [Petitioner] because he had been her dad as long as she was alive.

2. V.C.'S TESTIMONY

V.C.[4] was afraid to testify because she did not want to receive additional jail time. V.C. recalled being summoned to Doe's school. When she arrived, police were at the school. V.C. was questioned about sexual abuse committed by [Petitioner] against Doe. V.C. suspected prior to that day that [Petitioner] may be molesting Doe. She had seen blood in Doe's underwear when Doe was 10 years old, which was prior to her getting her period. When V.C. asked Doe, she "blushed" like she was scared. V.C. did nothing. She did ask [Petitioner] one time if he was "doing something wrong at home" and he said no. [Petitioner] always told her if there were ever any problems with the police, she would get deported.

On another occasion, V.C. found blood in the toilet. This also made her suspect that something may be going on between [Petitioner] and Doe. V.C. at some point stopped working nights in order to help protect the girls. K.A. told her one time that something had happened with [Petitioner] but K.A. never repeated it. V.C. was afraid to call the police. V.C. suspected the abuse for four years prior to Doe telling the school counselor.

---

[4] V.C.'s testimony from the preliminary hearing was read to the jury because she was an unavailable witness; she had been deported and could not be located in Mexico.

3. K.A.'S EVIDENCE CODE SECTION 1108 TESTIMONY

K.A. was born in October 1993, and was 20 years old on the day of trial. [Petitioner] was not her father. K.A. recalled that [Petitioner] began living with V.C. and the children when K.A. was eight or nine years old.

When K.A. was 11 years old, V.C. started working nights. When K.A. was 14 years old, K.A. was in the kitchen and [Petitioner] started touching her. He first hugged her and tried to kiss her. She backed away. He was able to kiss her cheek. K.A. went outside.

Later that same night, K.A. took a shower. Doe and her little brother were sleeping. After her shower, she put on her pajamas. As she walked back to her room, [Petitioner] came out of his bedroom. [Petitioner] was wearing only boxers or shorts. [Petitioner] grabbed K.A. by the arm and pulled her into his room. K.A. resisted but [Petitioner] threatened to report that V.C. was in the country illegally. [Petitioner] threw K.A. on the bed and pulled down her pants. He put his penis in her vagina. K.A. felt awful and wanted to die. This happened a "couple" times.

K.A. eventually ran away from home when she was 15 years old; K.A. told V.C. that [Petitioner] tried to touch her but did not tell her they had sex. V.C. never did anything about it. K.A. never told anyone else.

On December 14, 2011, K.A. was contacted by the police while she was living at her boyfriend's house. The police came to her house that night. When asked if she had been molested by [Petitioner], she responded only that he touched her over her clothes. She did not want to say, in front of her boyfriend, that she and [Petitioner] had sex. K.A. also did not say that she and [Petitioner] had sex when she later spoke with an investigator because V.C. was in custody and she did not want to make it worse for her.

The first time K.A. stated she and [Petitioner] had sex was at the trial. She had not told the prosecutor prior to her testimony at trial.

B. <u>DEFENSE</u>

Ever Valentin lived with [Petitioner] from 1989 to 1997. Valentin had four children. The children lived in Mexico but spent some time with [Petitioner]. Two of Valentin's children, including a girl, lived with [Petitioner] and her for two years. The girl was 18 years old at the time. [Petitioner] never did anything sexually inappropriate toward her. Valentin had never seen [Petitioner] be inappropriate with a minor girl.

Juan Carlos Zenteno met [Petitioner] at work and had known him for approximately 10 years. Zenteno described [Petitioner] as being a kind, attentive and nice person. Zenteno had four children, including a daughter. [Petitioner] never behaved inappropriately around them. [Petitioner] did not have a reputation for liking young children.

Riverside County Sheriff's Deputy Maurice Daugherty responded to the high school to investigate Doe's allegations of sexual abuse. Doe told Deputy Daugherty that [Petitioner] started molesting her when she was six years old, not when she was five years of age. She described the first time that [Petitioner] molested her; she had been sleeping on the living room couch. She woke up and [Petitioner] was on top of her. She described no sexual offenses that occurred in the bathroom. She described the sexual offense as [Petitioner] putting his penis in her vagina. She did not disclose any incidents of anal sex.

Doe was subjected to Riverside County Child Assessment Team (RCAT) interviews on December 15, 2011, and December 20, 2011. Detective Thomas Salisbury observed both interviews. Doe stated that [Petitioner] first had sex with her when she was six years old and the last time was when she was 12 years old. Doe stated that the first time that he had sex with her was on the living room couch. She described the incident as [Petitioner] putting his "dick" inside her vagina. Doe stated the sex always occurred on the living room couch. [Petitioner] never said anything to her before having sex with her. She never described an incident in the bathroom. Doe never stated that [Petitioner] had anal sex with her.

Doe described four distinct times that [Petitioner] had sex with her: the two times when she was the ages of six and 12; one time when she was seven years old when the sex lasted the longest; and one time when she was nine years old, she saw his penis. Doe "estimated" that she was six years old when the first incident happened.

## IV. PETITIONER'S CLAIMS

Petitioner raises the following claims for federal habeas relief:

Ground One: The trial court failed to strike Doe's testimony based on her refusal to answer questions on cross-examination, in violation of Petitioner's state and federal

constitutional rights to confront witnesses and to due process. (Petition at 5, Attachment at 1-4; Traverse at 2-3).

Ground Two: Doe's sister's testimony about Petitioner sitting in court and denying everything constituted "Griffin error," in violation of Petitioner's state and federal constitutional right to silence and privilege against self-incrimination. (Petition at 5-6, Attachment at 5-7; Traverse at 4-5).

Ground Three: The trial court admitted prior sexual offense evidence pursuant to California Evidence Code § 1108, in violation of Petitioner's federal rights to due process and a fair trial. (Petition at 6, Attachment at 8-14; Traverse at 6-10).

Ground Four: The trial court instructed the jury with CALCRIM No. 1191, thereby impermissibly shifting the burden of proof in favor of guilt, in violation of Petitioner's state and federal constitutional rights to due process and equal protection of the law. (Petition at 6, Attachment at 15-16; Traverse at 11-12).

Grounds Five and Six:

The trial court failed to instruct the jury <u>sua sponte</u> that "reasonable and good faith belief in consent is a defense to aggravated sexual assault," in violation of

Petitioner's federal constitutional rights to due process and a fair trial and Petitioner's state and federal constitutional right to a jury trial. (Petition at 6-7, Attachment at 17-20; Traverse at 13).

Ground Seven: The prosecutor committed misconduct by making disparaging and demeaning comments about Petitioner, in violation of Petitioner's federal constitutional rights to due process and a fair trial. (Petition at 8, Attachment at 20-23; Traverse at 14-15).

Ground Eight: The trial court imposed a restitution fine of $10,000 pursuant to P.C. § 1202.4(b)(1), in violation of Petitioner's federal constitutional right to a jury trial. (Petition at 9, Attachment at 24-26).

## V. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The term "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003); see also Cullen v. Pinholster, 563 U.S. 170, 182 (2011); Williams v. Taylor, 529 U.S. 362, 412 (2000)("clearly established Federal law" consists of holdings, not dicta, of Supreme Court decisions "as of the time of the relevant state-court decision"). However, federal circuit law may still be persuasive authority in identifying "clearly established" Supreme Court law or in deciding when a state court unreasonably applied Supreme Court law. See Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011); Tran v. Lindsey, 212 F.3d 1143, 1154 (9th Cir. 2000).

A state court decision is "contrary to" clearly established federal law if the decision applies a rule that contradicts the governing Supreme Court law or reaches a result that differs from a result the Supreme Court reached on "materially indistinguishable" facts. Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam); Williams, 529 U.S. at 405-06; see also Cullen v. Pinholster, supra ("To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court."). However, the state court need not cite the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early, supra.

A state court decision involves an "unreasonable application" of clearly established federal law "if the state court either unreasonably

extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407; Cullen v. Pinholster, supra; Woodford v. Visciotti, 537 U.S. 19, 24-27 (2002) (per curiam); Moore v. Helling, 763 F.3d 1011, 1016 (9th Cir. 2014)(courts may extend Supreme Court rulings to new sets of facts on habeas review only if it is "'beyond doubt'" that the ruling applies to the new situation or "a given set of facts."). A federal habeas court may not overrule a state court decision based on the federal court's independent determination that the state court's application of governing law was incorrect, erroneous or even "clear error." Lockyer, 538 U.S. at 75; Harrington v. Richter, 562 U.S. 86, 101 (2011)("A state court's determination that a claim lacks merit precludes federal relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."). Rather, a decision may be rejected only if the state court's application of Supreme Court law was "objectively unreasonable." Lockyer, supra; Woodford, supra; Williams, 529 U.S. at 409; see also Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004)("objectively unreasonable" standard also applies to state court factual determinations).

When a state court decision is found to be contrary to or an unreasonable application of clearly established Supreme Court law, a federal habeas court "must then resolve the [constitutional] claim without the deference AEDPA otherwise requires." Panetti v. Quarterman, 551 U.S. 930, 953 (2007); see also Williams, 529 U.S. at 406 (when a state court decision is contrary to controlling Supreme Court law, a federal habeas court is "unconstrained by § 2254(d)(1)"). In other

words, if a § 2254(d)(1) error occurs, the constitutional claim raised must be considered *de novo*. Frantz v. Hazey, 513 F.3d 1002, 1012-15 (9th Cir. 2008); see also Rompilla v. Beard, 545 U.S. 374, 390 (2005).

When the state court has not provided a reasoned explanation for its denial of the petitioner's claims, a federal court has no basis other than the record for determining whether the state court correctly identified the governing legal principle or was extending the principle into a new context. See Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000). Thus, "[f]ederal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law. . . . Only by that examination may we determine whether the state court's decision was objectively reasonable." Id. at 982; see also Richter, 562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas Petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

When a claim was rejected by the state court on procedural rather than substantive grounds, de novo review is required. See Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). De novo review is also required when it is clear that the state court has not decided an issue. Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

Petitioner raised Grounds One through Eight in his Petition for Review to the California Supreme Court, which denied the claims without comment or citation to authority. (See Lodgment Nos. 7-8). The Court "looks through" the California Supreme Court's silent denial to the last reasoned decision as the basis for the state court's judgment. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); Cannedy v. Adams, 706 F.3d 1148, 1159 (9th Cir. 2013) ("[W]e conclude that *Richter* does not change our practice of 'looking through' summary denials to the last reasoned decision – whether those denials are on the merits or denials of discretionary review." (footnote omitted)), as amended, 733 F.3d 794 (9th Cir. 2013). Therefore, in addressing Grounds One through Eight, the Court will consider the California Court of Appeal's reasoned opinion on direct appeal (see Lodgment No. 6). See Berghuis v. Thompkins, 560 U.S. 370, 380 (2010).

## VI. DISCUSSION

### A. Trial Court's Failure to Strike Doe's Testimony

In Ground One, Petitioner contends that the trial court failed to strike the testimony of the victim ("Doe") because of Petitioner's inability to conduct meaningful cross-examination of Doe based on her refusal to answer questions, in violation of Petitioner's state and federal constitutional rights to confront witnesses and to due process. Petitioner claims he "was deprived of his right to cross-exam, because

Doe refused to respond in any meaningful way to the questions asked of her [] by defense counsel, particularly when these questions related to Doe's prior inconsistent statement to law enforcement and the RCAT[5] interviewer." (Petition at 5, Attachment at 1-4; Traverse at 2-3).[6]

1. <u>The Record Below</u>

The California Court of Appeal summarized the proceedings concerning Doe's testimony as follows:

> Prior to trial, the prosecutor informed the trial court that Doe was hostile toward her because Doe blamed the prosecutor for V.C.[[7]] getting deported back to Mexico.[[8]] At the beginning of Doe's testimony, a break was taken because Doe was crying. During the break, Doe was advised by the trial court that she had to testify. Doe asked what would happen if she walked out of court. She was told she would probably be arrested. Doe asked if she could answer the questions in another room where the jury would not be present. The trial court advised her that she had to testify in front of the jury and [Petitioner]. The prosecutor then asked Doe if she was ready to resume testifying, and she responded "No." The prosecutor asked her, "Will there be a time today that you will be ready, or should I just go ahead." Doe responded,

---

[5] Riverside County Assessment Team. (2 RT 352).

[6] To the extent that Petitioner alleges in Grounds One, Two, Four, Five and Six the denial of his rights under the California Constitution, Petitioner's claims are not cognizable on federal habeas review. <u>See</u> 28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991)(reiterating that it is not the province of a federal habeas court to reexamine state court determinations on state law questions); <u>Smith v. Phillips</u>, 455 U.S. 209, 221 (1982)("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of some provision of the United States Constitution.").

[7] [V.C. –- Veronica Castillo -- is Doe's mother. <u>See</u> 1 RT 43].

[8] [<u>See</u> 1 RT 35-36].

"No." Questioning resumed.[9]

Thereafter, the prosecutor asked Doe to move her microphone closer to her mouth so everyone could hear her, and she responded, "I don't care." The prosecutor asked Doe why she was so angry; Doe responded that she already told the prosecutor what [Petitioner] had done to her.[10] After another sidebar, the prosecutor asked Doe if she was going to answer the questions about the different rooms in which the sexual assaults occurred. She responded, "No." The prosecutor's request to treat Doe as a hostile witness was granted.[11]

Doe then testified that another incident occurred while she was sleeping on the couch. Doe was again evasive and did not want to answer. She thought it was "dumb" and "embarrassing." Doe explained also that she was very shy and did not like to talk. She then refused to answer as to what happened on the couch. She reiterated that the questions were "dumb," that she did not remember "shit," and she said, "What do you expect a kid to remember? Especially things that I went through? Stop talking to me already."[12]

Another sidebar was taken. The trial court admonished Doe not to get angry. The trial court explained for the record that Doe slapped the witness stand and had turned around to face the wall when she was angry. The trial court advised Doe that she just needed to testify for at most two days and then she would be done. Doe told the trial court that she would not return the following day. The trial court advised Doe that if she said she was not coming back, she would not be allowed to leave that night.[13]

The trial court determined that it would recess until the following day to allow Doe to compose herself. Doe refused to calm down. The trial court was forced to remand her to juvenile detention facilities because of her refusal to appear. Doe responded, "Stupid. I fucking hate my life. Motherfucking be getting molested right now than being here.

---

9 [See 1 RT 47-50].

10 [See 1 RT 53].

11 [See 1 RT 59-61].

12 [See 1 RT 79-87].

13 [See 1 RT 87-89].

I don't know why I even said anything."[14]

The following day, Doe assured the trial court that she would respond to the questions.[15] Doe was responding to questions so the trial court reversed its order that she was a hostile witness.[16] She testified as set forth in the statement of facts, ante.[17]

During cross-examination, Doe denied she ever said prior to trial that the molestations started when she was six years old; she was five.[18] She also never told anyone that the molestations stopped when she was 12 years old.[19] Thereafter, Doe continuously stated that she could not remember what she told anyone prior to trial.[20] She denied that looking at the transcripts of her RCAT interviews would help her recall what she had said.[21] Doe admitted that she was very angry during the RCAT interviews and was yelling at the interviewer.[22] She did not know if she only said that she was molested in the living room and never said anything about the bathroom.[23]

Doe admitted the first time that she said [Petitioner] called it a game was at trial.[24] She did not know if her testimony at trial was the first time she said he sodomized her.[25] She continued to insist she did not remember what she told the RCAT interviewer.[26]

---

14 [See 1 RT 89-91].

15 [See 1 RT 93-96].

16 [See 1 RT 103-04].

17 [See 1 RT 97-119].

18 [See 1 RT 123-25].

19 [See 1 RT 123-24; see also 1 RT 131].

20 [See 1 RT 127-32].

21 [See 1 RT 126-28, 132; see also 1 RT 138].

22 [See 1 RT 130-31].

23 [See 1 RT 127, 132].

24 [See 1 RT 132].

25 [See 1 RT 132-33].

26 [See 1 RT 133-36].

> At the end of Doe's testimony, [Petitioner's] counsel moved to strike her testimony, arguing that he did not have an opportunity to effectively cross-examine her. Defense counsel argued that Doe refused to look at transcripts of her prior testimony and she was not truthful about forgetting her prior testimony. The trial court felt that Doe had not changed her testimony. Further, her attitude and credibility were for the trier of fact to determine. The trial court felt that her responses were sufficient. Whether Doe was truthful in saying that the transcripts would not refresh her memory was for the jury to decide. The trial court did not believe [Petitioner] was prevented from cross-examining her.[[27]]
>
> During [Petitioner's] Evidence Code section 1118.1 motion, defense counsel argued due process required that all of the counts be dismissed. The victim's failure to articulate the acts in a reasonably detailed manner and her failure to answer questions warranted dismissal.[[28]] The trial court felt that Doe had calmed down enough the second day to give appropriate testimony. Further, the jury could decide the credibility of Doe.[[29]]

People v. Noriega, supra, 237 Cal.App.4th 998-1000 (bracketed footnotes added); Lodgment No. 6 at 10-13 (bracketed footnotes added).

2. Legal Authority

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const., Amend. VI. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Maryland v. Craig, 497 U.S. 836, 845 (1990); see also Davis v. Alaska, 415 U.S. 308, 315-16 (1974) ("[T]he main and

---

[27] [See 1 RT 153-54].

[28] [See 2 RT 332-34].

[29] [See 2 RT 338-39].

essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." (citation and internal quotation marks omitted)); United States v. Owens, 484 U.S. 554, 556-57 (1988) (The Confrontation Clause, which "gives the accused the right 'to be confronted with the witnesses against him' . . . has long been read as securing an adequate opportunity to cross-examine adverse witnesses."). "Cross-examination is 'the principal means by which the believability of a witness and the truth of his testimony are tested.'" Kentucky v. Stincer, 482 U.S. 730, 736 (1987) (quoting Davis, supra, 415 U.S. at 316); see also Davis, supra (Cross-examination provides an opportunity to reveal "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand."). "[T]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Stincer, 482 U.S. at 739 (italics in original; quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam)). "The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee." United States v. Owens, 484 U.S. 554, 560 (1988).

3. The California Court of Appeal's Opinion

The California Court of Appeal addressed Petitioner's claim as follows:

> Cross-examination is "'the greatest legal engine ever

invented for the discovery of truth"' [citation] . . . ." (*Fost v. Superior Court* (2000) 80 Cal.App.4th 724, 733 (*Fost*). Cross-examination is "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." (*Pointer v. Texas* (1965) 380 U.S. 400, 405.) "Because it relates to the fundamental fairness of the proceedings, cross-examination is said to represent an "absolute right," not merely a privilege [citations] and denial or undue restriction thereof may be reversible error. [Citation.]" (*Fost*, at p. 733.)

"Where a witness refuses to submit to cross-examination, or is unavailable for that purpose, the conventional remedy is to exclude the witness's testimony on direct." (*Fost*, *supra*, 80 Cal.App.4th at p. 735, 95 Cal.Rptr.2d 620.) Moreover where a witness "frustrates" cross-examination by declining to answer some or all of the questions, the court may strike all or part of the testimony. (*People v. Price* (1991) 1 Cal.4th 324, 421, 3 Cal.Rptr.2d 106, 821 P.2d 610.) The decision whether to strike the direct examination, or a partial strike of the testimony, of a witness who does not submit to cross-examination is left to the discretion of the trial court. (*People v. Reynolds* (1984) 152 Cal.App.3d 42, 47–48, 199 Cal.Rptr. 379.)

[Petitioner] characterizes Doe's testimony on cross-examination as a refusal to answer questions. However, the People argue nothing in the record supports that Doe's lack of memory was deliberate or feigned to evade answering defense counsel's questions.

"[A] witness with genuine memory loss is considered available for a defendant's cross-examination. [Citation.]" *(People v. Gunder* (2007) 151 Cal.App.4th 412, 419, 59 Cal.Rptr.3d 817, called into doubt on another point in *People v. Moore* (2011) 51 Cal.4th 386, 121 Cal.Rptr.3d 280, 247 P.3d 515.) "The circumstance of feigned memory loss is not parallel to an entire refusal to testify. The witness feigning memory loss is in fact subject to cross-examination, providing a jury with the opportunity to see the demeanor and assess the credibility of the witness. . . ." (*Gunder*, at p. 420, 59 Cal.Rptr.3d 817.)

Here, the record supports that Doe was clearly traumatized and emotionally scarred. Most of the times that Doe stated she "did not remember" or "did not know" involved her inability to recall what she said during the first and second RCAT interviews.[[30]] She stated she was mad when the

[30] [See 1 RT 121-36].

> first interview occurred.[31] She also stated that she was trying to forget everything that had happened to her.[32]
>
> Moreover, she was evasive with both the prosecutor and defense counsel.[33] It was clear she did not want to recall the details of the molestations. The trial court did not abuse its discretion by finding that her statements on cross-examination that she did not remember, or did not know, were truthful statements and not a refusal to respond. Further, even if she was not truthful and was feigning ignorance, the jury clearly could determine her credibility based on her demeanor and actions on the stand. The jury was instructed, "If you do not believe a witness's testimony that he or she no longer remembers something, that testimony is inconsistent with the witness's earlier statement on that subject."[34]
>
> There was not a complete or partial refusal by Doe to be subjected to cross-examination that required exclusion of her direct testimony. Further, the jury was well aware of the inconsistencies in Doe's pretrial and trial testimony. [Petitioner] presented the testimony of Deputy Daugherty, who detailed all of the inconsistencies between Doe's pretrial and trial statements.[35] Further, Detective Salisbury, the officer who observed Doe's RCAT interviews, testified as to the inconsistencies between Doe's trial testimony and what she stated during the interviews.[36] While it is true [Petitioner] was unable to fully confront her about these inconsistencies, the issues were before the jury and [Petitioner] was not completely foreclosed of his rights of confrontation. The trial court did not abuse its discretion by refusing to strike Doe's testimony.

People v. Noriega, supra, 237 Cal.App.4th at 1000-02 (bracketed footnotes added); Lodgment No. 6 at 14-15 (bracketed footnotes added).

---

[31] [See 1 RT 111, 126, 130-31].

[32] [See 1 RT 125].

[33] [See e.g., 1 RT 52-53, 55-61, 67, 70, 72, 79-81, 83-87, 111-12, 121-38, 143-44].

[34] [See 2 RT 384; CT 178].

[35] [See 2 RT 320-23, 327-28].

[36] [See 2 RT 351-58, 363-67].

4. Analysis

As the California Court of Appeal noted, Doe was traumatized and emotionally scarred, her inability to recall what she said during her first and second RCAT interviews could be explained by her feeling of anger during the first interview and her attempt to forget everything that had happened (see 1 RT 111, 125-26, 130-31), and Doe was evasive during both direct examination and cross-examination based on her clear desire to not want to recall the details of the molestations (see e.g., 1 RT 52-53, 55-61, 67, 70, 72, 79-81, 83-87, 111-12, 121-38, 143-44). Although Doe could not remember many details of her pre-trial interviews, Petitioner still had the opportunity to effectively cross-examine Doe at trial. See Stincer, supra; Zambrano v. Gipson, 2016 WL 3033693, *13 (C.D. Cal. April 19, 2016) ("Jane Doe was present as a witness and available for questioning during cross-examination regarding the child molestations and her out-of-court interview. While Jane Joe could not remember the details of her interview or the child molestation allegations in court, or may have been afraid of testifying in court, that did not deprive Petitioner of an *opportunity* for effective cross-examination.").

Based on Petitioner's cross-examination of Doe, as well as Doe's testimony on direct examination, Riverside County Sheriff's Department Deputy Maurice Daugherty's testimony regarding inconsistencies between Doe's pre-trial statements and Doe's trial testimony (see 2 RT 320-23, 327-28), and Riverside County Sheriff's Department Detective Thomas Salisbury's testimony regarding inconsistencies between Doe's pre-trial RCAT interviews and Doe's trial testimony (see 2 RT 348, 351-58, 363-

67), the jurors were provided with sufficient information to be able to appraise Doe's biases and motivations and to assess Doe's credibility. See Davis, 415 U.S. at 318 (finding Confrontation Clause error where defense counsel was not permitted on cross-examination "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness"); United States v. Hayat, 710 F.3d 875, 897-98 (9th Cir. 2013) ("'Generally, once cross-examination reveals sufficient information with which to appraise a witness's possible bias and motives, confrontation demands are satisfied.'")(citation and footnote omitted); Hayes v. Ayers, 632 F.3d 500, 518 (9th Cir. 2011) (no Confrontation Clause violation because defense counsel's "cross-examination [of the witness] gave the jury ample opportunity to appraise [the witness's] biases and motivations"); see also Bright v. Shimoda, 819 F.2d 227, 229 (9th Cir. 1987) ("When substantial cross-examination has taken place, courts are less inclined to find confrontation clause violations."). Indeed, the trial court instructed the jurors regarding how to evaluate the testimony of a witness who does not remember something (see 2 RT 384; CT 178 ["If you do not believe a witness's testimony that he or she no longer remembers something, that testimony is inconsistent with the witness's earlier statement on that subject."]); and Petitioner's counsel argued during closing argument that Doe did not testify truthfully at trial based on her demeanor, her refusal to answer questions, and inconsistencies between her pre-trial statements and her trial testimony (see 2 RT 417-21).

Accordingly, the California Supreme Court's rejection of Petitioner's Confrontation Clause claim was not contrary to, or an

unreasonable application of, clearly established federal law.

**B. Witness's Comment on Petitioner's Silence**

In Ground Two, Petitioner contends that Doe's sister's testimony about Petitioner sitting in court and denying everything constituted "Griffin error," in violation of Petitioner's state and federal constitutional right to silence and privilege against self-incrimination. (Petition at 5-6, Attachment at 5-7; Traverse at 4-5).

Karen Aguirre ("Karen"), Doe's sister, testified that Petitioner sexually assaulted her (vaginal intercourse) in her bedroom at least a couple of times, starting when she was 14 years old. (See 1 RT 156-57, 163-74, 183). During redirect examination, the prosecutor asked Karen why she had decided to testify in court about what happened. Karen responded, "Because I just don't like the fact that he knows what he did. It wasn't just me, it was also my sister. And he still wants to sit here and deny everything." (See 1 RT 190).

The Fifth Amendment, as applied to the States by the Fourteenth Amendment, prohibits a prosecutor from commenting on a defendant's decision not to testify. Griffin v. California, 380 U.S. 609, 615 (1965) ("[C]omment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice,' which the Fifth Amendment outlaws.") (citation omitted). A statement by the prosecutor "is impermissible if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure

to testify." United States v. Gray, 876 F.2d 1411, 1416 (9th Cir. 1989) (quoting Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987)).

The California Court of Appeal found that there was no Griffin error based on the absence of any binding authority holding that a witness's comment on a defendant's failure to testify was prohibited by the Fifth Amendment. People v. Noriega, supra, 237 Cal.App.4th at 1003; Lodgment No. 6 at 22. ("We decline to extend *Griffin* beyond its plain language to include a witness's testimony"). Petitioner has failed to cite, and the Court has been unable to locate, any United States Supreme Court authority establishing that a witness's comment on a defendant's failure to testify can constitute Griffin error.[37] Based on the absence of United States Supreme Court authority squarely addressing this issue, the California Supreme Court's rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law. See Wright v. Van Patten, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law."); Yarbough v. Alvarado, 541 U.S. 652, 666 (2004) ("[I]f a habeas court must extend a rationale before it can apply to the facts at hand then the rationale

---

[37] Although, as Petitioner notes (see Petition, Attachment at 6; Traverse at 4), the Fifth Circuit Court of Appeals has held that a witness is prohibited from commenting on a defendant's failure to testify, see United States v. Rocha, 916 F.2d 219, 232 (5th Cir. 1990)("The Fifth Amendment prohibits a trial judge, a prosecutor or a witness from commenting upon a defendant's failure to testify in a criminal trial.")(citing inter alia Griffin); United States v. Sylvester, 143 F.3d 923, 929 (5th Cir. 1998)("The Fifth Amendment prohibits a witness from commenting on a defendant's failure to testify in a criminal trial.")(citing Griffin), the Court is not aware of any other appellate decision finding that Griffin is applicable to a witness's comment on a defendant's failure to testify.

cannot be clearly established at the time of the state-court decision."); Stenson v. Lambert, 504 F.3d 873, 881 (9th Cir. 2007) ("Where the Supreme Court has not addressed an issue in its holding, a state court adjudication of the issue not addressed by the Supreme Court cannot be contrary to, or an unreasonable application of, clearly established federal law.").

**C. Evidentiary Error**

In Ground Three, Petitioner contends that the trial court admitted prior sexual offense evidence pursuant to California Evidence Code § 1108, in violation of Petitioner's federal rights to due process and a fair trial. Petitioner claims that he was unduly prejudiced by the admission of such evidence because he was not charged with, tried, or punished for his alleged prior sexual misconduct. (Petition at 6, Attachment at 8-14; Traverse at 6-10).

Prior to trial, Petitioner filed a motion to exclude evidence of Petitioner's uncharged sexual molestation of Karen, pursuant to California Evidence Code ("E.C.") § 352.[38] (See CT 113). Prior to trial, the prosecution moved to admit evidence that Petitioner had sexually molested Karen, pursuant to E.C. § 1108.[39] The trial court

---

[38] Cal. Evid. Code § 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

[39] Cal. Evid. Code § 1108(a) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the (continued...)

ruled that the evidence was admissible under E.C. § 1108 and was not inadmissible under E.C. § 352. (See 1 RT 22-23).[40]

To the extent that Petitioner is alleging that the admission of such evidence violated his federal constitutional rights, he is not entitled to federal habeas relief. "Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (quoting 28 U.S.C. § 2254(d)). "The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process" and "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Id.; see also Alberni v. McDaniel, 458 F.3d 860, 863 (9th Cir. 2006) (The Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith."[41])(citation and

---

[39] (...continued) defendant's commission of another offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

[40] To the extent that Petitioner is alleging that the admission of evidence of Petitioner's uncharged sexual molestation of Karen violated California rules of evidence, Petitioner's claim is not cognizable on federal habeas review. See 28 U.S.C. § 2254(a); Estelle v. McGuire, supra; Smith v. Phillips, supra.

[41] In fact, the United States Supreme Court has expressly left this question open. See Estelle v. McGuire, supra, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use (continued...)

internal quotation marks omitted). Therefore, the California Supreme Court's rejection of Petitioner's evidentiary error cannot be contrary to, or an unreasonable application of, clearly established federal law. See Van Patten, supra; Carey v. Musladin, 549 U.S. 70, 77 (2006); Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (finding that the admission of propensity evidence was not contrary to, or an unreasonable application of, clearly established federal law when the Supreme Court had expressly reserved consideration of the issue in Estelle v. McGuire); Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008) ("The Supreme Court has expressly reserved the question of whether using evidence of the defendant's past crimes to show that he has a propensity for criminal activity could ever violate due process. Because the Court has expressly left this issue an open question, the state court did not unreasonably apply clearly established federal law in determining that the admission of evidence of Larson's criminal history did not violate due process.") (citation and internal quotation marks omitted).

**D. Instructional Error – CALCRIM No. 1191**

In Ground Four, Petitioner contends that the trial court instructed the jury with CALCRIM No. 1191, thereby impermissibly shifting the burden of proof in favor of Petitioner's guilt, in violation of Petitioner's state and federal constitutional rights to due process and equal protection of the law. Petitioner claims that the instruction, which allowed the prosecution to prove prior sexual misconduct by a

---

[41] (...continued)
of 'prior crimes' evidence to show propensity to commit a charged crime.").

preponderance of the evidence, "abrogate[d] the requirement of proof beyond a reasonable doubt of all the element[s] in the charged offenses" and improperly "allows the jury to determine the amount of weight to given to the evidence" of the charged and uncharged offenses. (Petition at 6, Attachment at 15-16; Traverse at 11-12).

Prior to closing arguments, the trial court, without objection (see 2 RT 369-75), instructed the jury with CALJIC No. 1191, as follows:

> The People presented evidence that the defendant committed the crimes of rape of Karen Aguirre that were not charged in this case. These crimes are defined for you in these instructions. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that is more likely than not that the fact is true. [¶] If the People have not met this burden of proof, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the uncharged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision also conclude that the defendant was likely to commit and did commit Counts 1 through 9 as charged here. If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along

> with all of the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Counts 1 through 9. The People still must prove each charge beyond a reasonable doubt. [¶] Do not consider this evidence for any other purpose except for the limited purpose of determining whether or not the defendant was disposed or inclined to commit sexual offenses.

(2 RT 389-90; see CT 195).

Instructional error warrants federal habeas relief only if the "'instruction by itself so infected the entire trial that the resulting conviction violates due process[.]'" Waddington v. Sarausad, 555 U.S. 179, 191 (2009) (citation and internal quotation marks omitted); Middleton v. McNeil, 541 U.S. 433, 437 (2004) (per curiam); Estelle v. McGuire, supra, 502 U.S. at 72; Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988). The instruction must be more than merely erroneous; rather, Petitioner must show there was a "reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." McNeil, supra (citations and internal quotation marks omitted); Sarausad, supra, 555 U.S. at 190-91; see also Cupp v. Naughten, 414 U.S. 141, 146 (1973) ("Before a federal court may overturn a conviction resulting from a state trial in which [an allegedly faulty] instruction was used, it must be established not merely that the instruction is undesirable, erroneous or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."). Moreover, the challenged instruction must be considered in the context of the instructions as a whole and the

entire trial record (including the arguments of counsel). Estelle v. McGuire, supra; United States v. Frady, 456 U.S. 152, 169 (1982); Cupp, supra, 414 U.S. at 147.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). "A jury instruction that reduces the level of proof necessary for the Government to carry its burden 'is plainly inconsistent with the constitutionally rooted presumption of innocence." Schultz v. Tilton, 659 F.3d 941, 943 (9th Cir. 2011) (quoting Cool v. United States, 409 U.S. 100, 104 (1972)).

The California Court of Appeal rejected Petitioner's claim as follows:

> In *People v. Reliford*[] [(2003),] 29 Cal.4th 1007, the court considered an instruction similar to CALCRIM NO. 1191, and concluded it (1) properly reflected the law set forth in Evidence Code section 1108; (2) permitted the factfinder to consider prior sex offenses to prove criminal disposition; (3) allowed for permissible and appropriate inferences; and (4) did not violate due process of law. (*Reliford*, at pp. 1011-1016; see also *People v. Loy* (2011) 52 Cal.4th 46, 71-76 [approving *Reliford*)].) We are bound by the decisions of our Supreme Court. (*Auto Equity Sales, Inc. V. Superior Court*[] [(1962)] 57 Cal.2d [450,] 455.) Accordingly, we reject defendant's contention.

(Lodgment No. 6 at 27).

The California Court of Appeal reasonably found that CALJIC No. 1191 did not impermissibly lower the prosecution's burden of proof. Petitioner's claim is foreclosed by Schultz v. Tilton, supra, in which

the Ninth Circuit considered whether CALJIC No. 2.50.01 ("Evidence of Other Sexual Offenses"), the predecessor of CALCRIM No. 1191, lowered the prosecution's burden to prove every element of a crime beyond a reasonable doubt because it allowed the jury to use the preponderance standard with respect to uncharged prior sexual offenses to find the defendant guilty of the charged offenses. Id. at 943. The Ninth Circuit rejected the petitioner's claim, reasoning: "We hold that the California Court of Appeal did not act contrary to federal law in applying the analysis from *Reliford* to uphold the 2002 version of CALJIC No. 2.50.01. . . . CALJIC No. 2.50.01 in no way suggests that a jury could reasonably convict a defendant for charged offenses based on merely a preponderance of the evidence. Reflecting the revisions made in both 1999 and 2002, the instruction given to [the defendant's] jury was unambiguous and made clear that [the defendant] could be convicted only if the evidence as a whole 'proved [him] guilty beyond a reasonable doubt of the charged crime.'"). Id. at 945. Similarly, CALCRIM No. 1191 does not suggest that the jury could find Petitioner guilty for the charged offenses based on a preponderance of the evidence. Rather, CALJIC No. 1191 explicitly states that the evidence of the prior sexual offenses is "not sufficient by itself to prove that the defendant is guilty" of the charged offenses, that the conclusion that the defendant committed the uncharged offenses "is only one factor to consider along with all of the other evidence," and that the prosecution still had the burden of proving each element of the charged offenses beyond a reasonable doubt.

Accordingly, the California Supreme Court's rejection of Petitioner's instructional error claim regarding CALCRIM No. 1191 was

not contrary to, or an unreasonable application of, clearly established federal law.

**E. Instructional Error – Failure to Instruct on Consent**

In Grounds Five and Six, Petitioner contends that the trial court failed to instruct the jury sua sponte that "reasonable and good faith belief in consent is a defense to aggravated sexual assault," in violation of Petitioner's federal constitutional rights to due process and a fair trial and of Petitioner's state and federal constitutional right to a jury trial. Petitioner claims that "there was sufficient evidence of equivocal conduct by Doe to warrant such instruction." (Petition at 6-7, Attachment at 17-20; Traverse at 13).

1. The Record Below

The trial court, without objection (see 2 RT 369-75) instructed the jury with CALCRIM no. 1123 as follows:

> The defendant is charged in Counts 1 through 9 with aggravated sexual assault of a child . . . who was under the age of 14 years and at least 10 years younger than the defendant, in violation of Penal Code Section 269(a). [¶] To prove that the defendant is guilty of this crime, the People must prove that: The defendant committed rape, 261(a), subsection (2) of the Penal Code, on another person; and when the defendant acted, that other person was under the age of 14 years and was at least 10 years younger than the defendant.

> [¶] To decide whether the defendant committed rape, please refer to the separate instruction that I will give you on that crime, 261(a), subsection (2) of the Penal Code. [¶] Under the law, a person becomes one year older as soon as the first minute of his or her birthday has begun.

(2 RT 387-78; see CT 191).

The trial court, without objection (see 2 RT 369-75), also instructed the jury with a modified version of CALCRIM No. 1000 as follows:

> The defendant is charged in Count 2 through 9 with rape by force, in violation of Penal Code Section 261(a). [¶] To prove that the defendant is guilty of this crime, the People must prove that the defendant had sexual intercourse with a women; he and the woman were not married to each other at the time of the intercourse; the woman did not consent to the intercourse; and the defendant accomplished the intercourse by force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the woman or to someone else. [¶] Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis. Ejaculation is not required. [¶] To consent, a woman must act freely and voluntarily and know the nature of the act. [¶] Intercourse is accomplished by force if a person uses enough physical force to overcome the woman’s will. [¶] Duress means a direct or implied threat of force, violence, danger, or retribution that

> would cause a reasonable person to do or submit to something that she would not do or submit to otherwise. When deciding whether the act was accomplished by duress, consider all of the circumstances, including the woman's age and her relationship to the defendant. [¶] Menace means a threat, statement, or act showing an intent to injure someone. [¶] Intercourse is accomplished by fear if the woman is actually and reasonably afraid, or she is actually but unreasonably afraid and the defendant knows of her fear and takes advantage of it.

(2 RT 388-89; see CT 192-93).

During closing argument, Petitioner's counsel argued that (1) the prosecution had not met its burden of proving beyond a reasonable doubt that Petitioner sexually molested Doe; (2) Doe, Karen and Veronica Castillo all lied about the molestations because of their personal feelings toward Petitioner; (3) Doe's trial testimony was inconsistent with her statements prior to trial; (4) Doe's testimony about what happened was "generic" and not believable; and (5) since the evidence did not establish the element of duress the jury could find at most a lesser included offense ("an unwanted touching, a battery"). (See 2 RT 409-29).

2. Legal Authority

As discussed above, Petitioner must show that the instructional error so infected the entire trial that the resulting conviction

violated due process. Sarausad, supra; McNeil, supra; Estelle v. McGuire, supra; Dunckhurst v. Deeds, supra. A petitioner challenging the failure to give an instruction bears an "especially heavy" burden because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977) ; Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997); Hendrix v. Vasquez, 974 F.2d 1099, 1106 (9th Cir. 1992). As discussed above, whether a constitutional violation occurred must be evaluated in the context of the overall charge to the jury and the trial record. Estelle v. McGuire, supra; Duckett v. Godinez 67 F.3d 734, 745 (9th Cir. 1995).

A criminal defendant "is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988); Bradley v. Duncan, 315 F.3d 1091, 1098 (9th Cir. 2002). However, failure to instruct on a defense theory constitutes reversible error only "'if the theory is legally sound and evidence in the case makes it applicable.'" Clark v. Brown, 450 F.3d 898, 904-05 (9th Cir. 2006) (citations omitted).

3. The California Court of Appeal's Opinion

After assuming, without deciding, that a reasonable, good faith belief in consent is a defense to the offense of aggravated sexual assault on a child under the age of 14 by means of rape (see Lodgment

No. 6 at 29),[42] the California Court of Appeal discussed the legal standard for a consent instruction in this context, as follows:

> "The trial court has a sua sponte duty to instruct on defenses where there is substantial evidence to support the instruction. [Citation.]" (*People v. Felix* (2001) 92 Cal.App.4th 905, 911.) Under *People v. Mayberry* (1975) 15 Cal.3d 143 (*Mayberry*), a defendant charged with a forcible sex offense is not guilty if he or she had a mistaken but good faith and reasonable belief that the victim consented. (*Id.* at pp. 153-158.) "If a defendant entertains a reasonable and bona fide belief that a prosecutrix voluntarily consented . . . to engage in sexual intercourse, it is apparent he does not possess the wrongful intent that a prerequisite . . . to a conviction of . . . rape by means of force or threat [citation]." (*Id*. at p. 155.)
>
> "[T]he *Mayberry* defense 'has two components, one subjective, and one objective. The subjective component asks whether the defendant honestly and in good faith, albeit mistakenly, believed that the victim consented to sexual intercourse. In order to satisfy this component, a defendant must adduce evidence of the victim's equivocal conduct on the basis of which he erroneously believed there was consent. [¶] In addition, the defendant must satisfy the objective component, which asks whether the defendant's mistake regarding consent was reasonable under the circumstances. Thus, regardless of how strongly a defendant may subjectively believe a person has consented to sexual intercourse, that belief must be formed under circumstances society will tolerate as reasonable in order for the defendant to have adduced substantial evidence giving rise to a *Mayberry* instruction.' [Citation.]" (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1148.)

---

[42] Since the rape element of aggravated sexual assault on a child under the age of 14 under California law requires that the rape be "accomplished against a person's will" P.C. § 261(a)(2), consent arguably is a defense to the crime of aggravated sexual assault on a child under age 14. See People v. Soto, 51 Cal.4th 229, 244-48 (2011) (consent was not a defense to the crime of aggravated lewd act against a child under age 14 [P.C. § 288(b)(1)], in part, because the California Legislature had amended the statute to delete language that the lewd act committed by use of force, violence, duress, menace, or fear was "against the will of the victim."). As discussed below, the California Court of Appeal resolved Petitioner's claim based on a harmless error analysis. Therefore, the Court does not need to decide whether it was error for the trial court not to instruct the jury about consent as a defense to aggravated sexual assault on a child under the age of 14.

(Lodgment No. 6 at 29-30).

The California Court of Appeal then addressed whether the instructional error was harmless under Chapman v. California, 386 U.S. 18, 24 (1967):

> Here, [Petitioner] did not take the stand; thus, he did not testify that he subjectively believed Doe consented. [Petitioner's] defense was that he never touched Doe. There simply was no evidence to support an instruction [Petitioner] was claiming he had a reasonable, good faith belief that Doe consented to the sexual assaults. As such, he was not entitled to the *Mayberry* instruction, even if it was applicable.
>
> Moreover, there was no evidence of a mistaken belief in consent that society would tolerate as reasonable under the circumstances. [Petitioner] was the only father that Doe ever knew.[43] This gave him parental control over Doe. She was left in his care while V.C. went to work.[44] Doe was either five or six years old when the abuse began and she testified she told no one because she did not understand what was happening to her.[45] Based on the relationship between Doe and [Petitioner], even if the jury was instructed as averred by [Petitioner], it is clear beyond a reasonable doubt that it would have rejected that such a reasonable belief in consent could exist.
>
> Moreover, based on the instructions, the jury had to conclude [Petitioner] used force or duress in committing the acts, which is further evidence the jury would reject that [Petitioner] believed Doe consented to the acts. As argued by the prosecutor, Doe did not consent because she did not know what was happening, and [Petitioner] forced her by telling her it was a game.[46] Just like a parent can get a child to perform a task because the parent occupies the role of being in charge, [Petitioner] could get Doe to do these acts because

---

[43] [See 1 RT 43-45, 148-49].

[44] [See 1 RT 66-67, 74-75, 106].

[45] [See 1 RT 52-53, 56, 62, 69, 75, 78-79, 112, 131].

[46] [See 2 RT 399-400].

> of his parental role.[[47]] The evidence of duress contradicted any claim of consent by [Petitioner].
>
> We are convinced beyond a reasonable doubt that, even if the jury had been given a *Mayberry* instruction, it would have found that [Petitioner] did not actually entertain an objectively reasonable belief in consent. As such, any conceivable error was harmless.

(Lodgment No. 6 at 31-32, bracketed footnotes added).

4. Analysis

The California Court of Appeal found that the instructional error was not prejudicial under the federal standard for harmless error.[48] Thus, the sole determination for this Court is whether the California Court of Appeal "applied harmless-error review in an 'objectively unreasonable' manner." See Mitchell v. Esparza, 540 U.S. 12, 18 (2003); see also Davis v. Ayala, 135 S.Ct. 2187, 2198 (2015) ("Because the highly deferential AEDPA standard applies, we may not overturn the California Supreme Court's decision unless that court applied *Chapman [v. California,* supra*]* in an objectively unreasonable manner.") (citation and internal quotation marks omitted). The Court finds that it did not.

---

[47] [See 2 RT 400-01].

[48] See e.g., Cal. v. Roy, 519 U.S. 2, 5 (1996) (holding that instructional errors that are "trial errors" are subject to harmless error analysis); Hedgpeth v. Pulido, 555 U.S. 57, 60 (2008) (per curiam) ("In a series of post-*Chapman* cases, however, we concluded that various forms of instructional error are not structural but instead trial errors subject to harmless-error review. . . . And *Neder [v. United States,* 527 U.S. 1, 11 (1999)] makes clear that harmless-error analysis applies to instructional errors so long as the error at issue does not categorically "'vitiat[e] *all* the jury's findings.'") (citation omitted).

As the California Court of Appeal found, there was no evidence that Petitioner had a good faith and reasonable belief that Doe consented to sexual intercourse (the subjective component of the Mayberry defense). Doe did not testify about his good faith and reasonable belief that Doe consented. Moreover, contrary to Petitioner's assertion (see Petition, Attachment at 19), Doe's testimony that she told Petitioner "no" on only one occasion (see 1 RT 102) and that Petitioner did not use force or violence against her or threaten her (see 1 RT 101, 150) did not show equivocal conduct on the basis of which Petitioner erroneously believed in Doe's consent. See People v. Williams, 4 Cal.4th 354, 363 (1992) (stating that the testimony of the victim's "unequivocal behavior was evidence of actual consent, not reasonable and good faith belief as to consent").

In addition, as the California Court of Appeal found, there was no evidence of Petitioner's mistake regarding Doe's consent that society would tolerate as reasonable under the circumstances (the subjective component of the Mayberry defense). [Petitioner] was approximately 45 years old (see 2 RT 349-50) when Doe was 5 or 6 years old (when the sexual intercourse began), Petitioner was Doe's sole fatherly figure, and Petitioner was responsible for taking care of Doe when Doe's mother was working.

Finally, as the California Court of Appeal found, the jury would not have found that Petitioner had a reasonable and good faith belief in Doe's consent based on the evidence presented at trial -- Doe's testimony that Petitioner was her sole fatherly figure, that Petitioner engaged in sexual misconduct when Doe's mother was not around, that Doe

did not know what was happening, and that Petitioner told her it was a game.

The record supports the California Court of Appeal's determination that Petitioner had failed to demonstrate prejudice from the trial court's failure to instruct the jury on Petitioner's good faith and reasonable belief in Doe's consent as a defense to the charge of aggravated sexual assault on a child under age 14. Therefore, the California Court of Appeal's harmless error review was not objectively unreasonable.

Accordingly, the California Supreme Court's rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law.

**F. Prosecutorial Misconduct**

In Ground Seven, Petitioner contends that the prosecutor committed misconduct during closing argument by making disparaging and demeaning comments about Petitioner in an attempt to inflame the jury, in violation of Petitioner's federal constitutional rights to due process and a fair trial. (Petition at 8, Attachment at 20-23; Traverse at 14-15).

Federal habeas review of prosecutorial misconduct claims is limited to the narrow issue of whether the alleged misconduct violated due process. Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974); Thompson

v. Borg, 74 F.3d 1571, 1576 (9th Cir. 1996). Misconduct is reviewed in light of the entire trial, and relief will be granted only if the misconduct by itself infected the trial with unfairness. Donnelly, supra, 416 U.S. at 639-43; see also Darden v. Wainwright, 477 U.S. 168, 183 (1986); Drayden v. White, 232 F.3d 704, 713 (9th Cir. 2000); Furman v. Wood, 190 F.3d 1002, 1006 (9th Cir. 1999).

In reviewing a habeas claim based on prosecutorial misconduct arising from improper argument, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, supra, 477 U.S. at 181 ([I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned."); see also Smith v. Phillips, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). "A prosecutor's misleading and inflammatory arguments may violate a defendant's due process rights to a fair trial." Sechrest v. Ignacio, 549 F.3d 789, 807 (9th Cir. 2008)(quoting Darden, supra, 477 U.S. at 181-82). In determining whether a comment infected the trial with unfairness, the court views the remark in the context of the entire trial. Boyde v. California, 494 U.S. 370, 384-85 (1990); Greer v. Miller, 483 U.S. 756, 765-66 (1987); Hall v. Whitley, 935 F.2d 164, 165 (9th Cir. 1991).

Toward the end of closing argument, the prosecutor stated "I ask you to hold him accountable and look at him, You're a horrible **piece of trash**, you're not even human. And I ask you to do that with guilty verdicts on all counts. (2 RT 408, emphasis added).

During rebuttal argument, the prosecutor stated, “The girl is not lying to you. She had absolutely no motive. Did she want that **piece of trash** out of her house, out of her life? Absolutely. Absolutely. That man right there, that man sitting there, he’s a **monster**. That man likes to have sex with children. Of course [Doe] doesn’t want to be around him. Of course she wants him out of her life. But she’s not lying. She has no motive to lie to you.” (2 RT 431, emphasis added).

The California Court of Appeal rejected Petitioner’s claim as follows:

> Here, the prosecutor briefly described [Petitioner] as being a monster and a piece of trash to emphasize that the crimes [Petitioner] committed against Doe were significant and deplorable. Such brief comments in a lengthy argument do not amount to prosecutorial misconduct.
>
> Moreover, even if we were to conclude that such comments amounted to misconduct, they did not violate [Petitioner’s] federal constitutional rights because it was not a pattern of conduct so egregious that it infected the trial with such unfairness as to make the conviction a denial of due process (*People v. Gionis* (1995) 9 Cal.4th 1196, 1214) . . . . These brief references did not infect the trial with such unfairness so as to make the conviction a denial of due process . . . . Further, as previously discussed, the evidence substantially supported [Petitioner’s] convictions as Doe’s testimony was convincing and was corroborated by other evidence.

(Lodgment No. 6 at 34-35).

The record supports the California Court of Appeal’s conclusion that the prosecutor’s comments did not constitute misconduct because they simply emphasized the significant nature and scope of the crimes committed against Doe. The record further supports the California Court’s alternative conclusion that the prosecutor’s comments did not

infect the trial with unfairness when viewed in the context of the entire trial record. While the prosecutor's "piece of trash" and "monster" comments may have been inflammatory, they were not worse than comments which have been found not to be improper, such as a prosecutor repeatedly calling a defendant a "monster" "filth" and a "reincarnation of the devil," see Comer v. Schiro, 463 F.3d 934, 960-61 (2006), a prosecutor calling the perpetrator of a crime a "monster of a human being," see Turner v. Marshall, 63 F.3d 807, 818 (9th Cir. 1995), overruled on other grounds, Tolbert v. Page, 182 F.3d 677 (9th Cir. 1999)), and a prosecutor calling a defendant an "animal" and labeling the crime "the work of an animal," see Darden, supra, 477 U.S. at 179-80. Moreover, the trial court instructed the jury that counsel's comments were not evidence (see 1 RT 38; 2 RT 380; see CT 174). See Boyde, 494 U.S. at 384 ("[A]rguments of counsel generally carry less weight with a jury than do instructions from the court."). The jury is presumed to have followed the trial court's instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000).

Accordingly, the Court finds that the California Supreme Court's rejection of Petitioner's prosecutorial misconduct claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law.

**G. Restitution Fine**

Petitioner contends that the trial court imposed the maximum restitution fine of $10,000 pursuant to P.C. § 1202.4(b)(1), in violation of Petitioner's federal constitutional right to a jury trial.

(Petition at 9, Attachment at 24-26).

"[T]he writ of habeas corpus is limited to attacks upon the legality or duration of confinement." Crawford v. Bell, 599 F.2d 890, 891 (9th Cir. 1979) (citing Preiser v. Rodriguez, 411 U.S. 475, 484-86 (1973)); see also Hill v. McDonough, 547 U.S. 573, 579 (2006) ("'Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus.'") (citation omitted). Since Petitioner's claim does not attack the legality or duration of his confinement, his claim is not cognizable on federal habeas review. See Bailey v. Hill, 599 F.3d 976, 984 (9th Cir. 2010) ("Given the plain text of § 2254(a), and consistent with the Seventh Circuit's decision in Washington v. Smith, 564 F.3d 1350 (7th Cir. 2009) and our reasoning in United States v. Thiele, 314 F.3d 399 (9th Cir. 2002), and United States v. Kramer, 195 F.3d 1129 (9th Cir. 1999), we hold that § 2254(a) does not confer jurisdiction over a habeas petition raising an in-custody challenge to a restitution order.").

//

//

//

## VII. RECOMMENDATION

For the reasons discussed above, it is recommended that the district court issue an Order: (1) accepting this Report and Recommendation; (2) denying the Petition for Writ of Habeas Corpus; and (3) directing that Judgment be entered dismissing the action with prejudice.

DATED: December 28, 2016.

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file Objections as provided in the Local Rules Governing the Duties of the Magistrate Judges and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.